UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLLECTARIUS FINANCIAL, LLC,

      Plaintiff,

v.                                           Case No. 8:18-cv-137-T-24 AEP

STATEBRIDGE COMPANY, LLC,

      Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 6). Plaintiff opposes the motion. (Doc. No. 34). As explained below, Defendant's motion is granted.

**I. Standard of Review**

Defendant moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff lacks standing to pursue its claims.[1] In this case, Defendant makes a factual attack on the Court's subject matter jurisdiction, and as such, the following standard of review applies:

> Attacks on the court's subject-matter jurisdiction are either facial or factual attacks. "In a factual challenge to subject matter jurisdiction, a district court can 'consider extrinsic evidence such as deposition testimony and affidavits.' In so doing, a district court is 'free to weigh the facts' and is 'not constrained to view them in the light most favorable' to the plaintiff."

Araya-Solorzano v. Government of Republic of Nicaragua, 562 Fed. Appx. 901, 905 n.4 (11th

---

[1] Defendant also moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. However, because the Court finds that it lacks subject matter jurisdiction over this case due to Plaintiff's lack of standing, the Court will not address Defendant's Rule 12(b)(6) arguments.

Cir. 2014)(internal citations omitted)

## II. Background

Defendant Statebridge Company, LLC provides mortgage loan services for lenders and other mortgage holders. As part of its services, Defendant retains counsel to pursue foreclosures.

Beginning in 2014, Defendant retained the Law Offices of Damian G. Waldman P.A. ("Waldman Law") to provide legal services for Defendant related to the foreclosure lawsuits. (Doc. No. 7, ¶ 3). Plaintiff Collectarius Financial, LLC alleges in its complaint that Defendant was indebted to Waldman Law in the amount of $429,547.75 ("the Waldman Debt"). On November 14, 2017, Plaintiff paid Waldman Law ten dollars "and other good and valuable consideration" in exchange for an assignment of the Waldman Debt to Plaintiff. (Doc. No. 34-1, Ex. D). As a result of the assignment, Plaintiff contends that it now owns the Waldman Debt and that Defendant owes it $429,547.75.

Plaintiff filed suit against Defendant in state court in Lee County, Florida. In its complaint, Plaintiff asserts three claims: (1) open account, (2) unjust enrichment, and (3) account stated. Defendant removed the case to the Fort Myers Division of the Middle District of Florida, and the case was later transferred to this Court in the Tampa Division. Currently pending before the Court is Defendant's motion to dismiss.

## III. Motion to Dismiss

Defendant moves to dismiss this case for lack of subject matter jurisdiction, arguing that Plaintiff lacks standing to pursue its claims. Specifically, Defendant contends that Waldman Law's assignment of the Waldman Debt to Plaintiff violated certain ethical rules of the Florida

Bar,[2] and as such, the assignment (which is Plaintiff's basis for standing) is void because it is against public policy.

Contracts that violate public policy are void and will not be enforced by the courts. See Stewart v. Stearns & Culver Lumber Co., 48 So. 19, 25 (Fla. 1908). As explained by one court:

> Parties to a contract are generally free to contract "out of" or "around" state or federal law, but they may not enter a contract that is void as a matter of public policy. Public policy empowers this Court to decline enforcement of a contract. Public policy is defined as: "Community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like; it is that general and well-settled public opinion relating to man's plain, palpable duty to his fellowmen, having due regard to all circumstances of each particular relation and situation." Contracts that are contrary to public policy are void because they have no legal sanction and establish no legal bond between the parties. To be void as matter of public policy the contract must have a bad tendency or contravene the established interests of society. Under Florida law, a contract that violates public policy is void and unenforceable. The rationale of the rule is that the judiciary as an institution will not provide aid to enforce an obligation that arises from an illegal contract. To determine whether a contract violates public policy courts must look to established law, primarily to statutes and secondarily to decisions of the courts.

Neiman v. Provident Life & Accident Ins. Co., 217 F. Supp.2d 1281, 1286 (S.D. Fla. 2002)(internal citations omitted). Defendant points to the following Florida Bar ethical rules and opinions violated by Waldman Law's assignment of the Waldman Debt to Plaintiff.

**A. Ethical Rules**

Rule 4-1.6(a) of the Rules of Professional Conduct provides that a lawyer must not reveal information relating to the representation of his or her client unless: (1) the client gives informed

---

[2]The ethical rules are found in the Rules Regulating the Florida Bar, specifically Chapter 4: Rules of Professional Conduct.

consent, or (2) one of the Rule's exceptions applies. One exception contained in Rule 4-1.6(c)(2) is that "[a] lawyer may reveal confidential information to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client."

Defendant contends that Waldman Law's assignment of the Waldman Debt to Plaintiff will violate this ethical rule of confidentiality, because Defendant disputes the amount of the debt owed. Rule 4-1.5(a) of the Rules of Professional Conduct provides that a lawyer's fee must be reasonable, and Rule 4-1.5(b) provides the factors to be considered when determining the reasonableness of the fee.[3] Since Defendant intends to challenge the reasonableness of the Waldman Debt, confidential information relating to Waldman Law's representation of Defendant will likely be revealed. Therefore, Defendant argues that the assignment violates its right to confidentiality, because a challenge to the reasonableness of the fees being collected will likely lead to a disclosure of Defendant's confidential information to Plaintiff. The Court is persuaded by this argument to the extent that Waldman Law assigned its right to sue in order to collect the Waldman Debt.

The Comment to Rule 4-1.6 provides that "[t]he confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." The Comment to Rule 4-1.6 goes on to provide the following:

---

[3]Some of the factors that could reveal confidential communications include "the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client," and "the nature and extent of the disclosure made to the client about the costs." Rule 4-1.5(b)(1)(E) and Rule 4-1.5(b)(2)(A).

> A lawyer entitled to a fee is permitted by [Rule 4-1.6(c)(2)] to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. . . . [T]he lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

Comment to Rule 4-1.6 of the Rules of Professional Conduct. Thus, it is clear that the client's right to confidentiality is strictly protected and that lawyers are advised that they may need to obtain protective orders when they file a lawsuit to collect on a fee that the client challenges.

### B. Ethics Opinions

Additionally, Defendant points to two Florida Bar ethics opinions to support its position.[4] First, Ethics Opinion 88-1 (July 15, 1998) provides the following: "An attorney whose client has reneged on a fee agreement should not take action adverse to the client to enforce the agreement until the representation has been concluded, whether by withdrawal or by conclusion of the client's matter. . . . An attorney should file suit against a client for fees only as a last resort."

Defendant contends that Waldman Law has provided legal services to Defendant since 2014 in a variety of matters. (Doc. No. 7, ¶ 4). While Waldman Law is not currently representing Defendant in any active litigation matters, Waldman Law has never provided express notice to Defendant that it was terminating their attorney-client relationship. (Doc. No. 7, ¶ 4). As such, Defendant argues that Waldman Law, itself, could not pursue collection efforts in court unless and until it concluded its representation of Defendant, and according to

---

[4]While ethics opinions are not controlling, "they are persuasive authority and, if well reasoned, are entitled to great weight." Chastain v. Cunningham Law Group, P.A., 16 So. 3d 203, 206–07 (Fla. 2d DCA 2009)(citations omitted).

Defendant, Waldman Law has not yet clearly done so. Therefore, Defendant analogizes that Plaintiff should not be able to file suit to collect on a debt that Waldman Law could not now pursue.

Second, Defendant points to Ethics Opinion 72-43 (February 23, 1973), which addresses assignments of attorneys' fees owed when the amount is undisputed and notes the overriding concern about disclosure of confidential information: "The assignment of a receivable representing a fee for professional services immediately raises concern about the confidential relationship between lawyer and client, including such confidential matters as the client's need for legal services and amount of the fee owed for such services." This ethics opinion goes on to conclude that "[a] lawyer may assign to a third party an account receivable representing professional fees as long as the client consents and the assignment limits to the lawyer the right to sue in the event of default." The Committee noted that the client's consent was sufficient to waive confidentiality concerns regarding the assignment to collect the fees and noted the importance of limiting the right to file suit to the attorney. Defendant points out that it did not consent to the assignment and that the assignment did not limit to Waldman Law the right to file a lawsuit for collection. (Doc. No. 7, ¶ 6–8).

While the Court notes that Ethics Opinion 72-43 specifically states that "[t]he Committee does not express any opinion on the ethical propriety of an assignment of receivables from a client if the client does not have knowledge of and consent to such assignment," it seems clear that the Committee believed that only the lawyer may sue the client to collect the fees. Plaintiff, however, argues that a different ethics opinion controls.

Specifically, Plaintiff points to Ethics Opinion 95-3 (May 30, 1997), which provides that

"[a] law firm may assign delinquent accounts receivable to a corporation wholly owned by the firm and an attorney of the firm may represent the corporation in a lawsuit against the client to collect the delinquent funds." The Committee found such a situation to be ethically allowable when the assignee corporation is wholly owned by the law firm's partners. The Committee stated that it saw "little meaningful distinction between an attorney directly suing a former client for fees . . . and representing the wholly-owned assignee corporation in bringing suit against the delinquent former client."

There is a flaw in Plaintiff's reliance on Ethics Opinion 95-3. Specifically, the opinion itself provides the following: "[W]e explicitly limit this opinion to the facts and circumstances presented. This opinion does not reach the question[] of whether a law firm may assign delinquent accounts receivable to a collections corporation that is not wholly owned by the firm's members . . . ." There is no evidence before the Court that Plaintiff is wholly owned by Waldman Law. (Doc. No. 1, p. 2; Doc. No. 1-3; Doc. No. 24, p.1).

The only other relevant ethics opinion that this Court has found is Ethics Opinion 81-3, which provides that "[a]n attorney[,] whose reasonable efforts to collect a delinquent fee from a client are unsuccessful[,] may use a reputable collection agency to collect the fee." However, it appears that this opinion contemplates only collection efforts by the collection agency without resort to the judicial process. The Committee was allowing the use of a collection agency as an alternative to the lawyer suing the client, noting that such lawsuits simply "add to the already heavy burden on our court system." Thus, this opinion appears to support Defendant's contention that only a lawyer can sue to collect his or her fee. Furthermore, a Florida Bar article written by an Assistant Ethics Counsel to the Florida Bar interpreted this opinion allowing

7

collections by a collection agency to only apply when the fee at issue is not disputed.[5]

### C.  Case Law

The Court acknowledges that there is no clear, binding authority controlling the issue of whether a law firm can assign a client's legal fee debt to a collection agency to pursue through litigation.  However, based on the above, it appears to this Court that Waldman Law's assignment of the Waldman Debt to Plaintiff to pursue collection through litigation will impinge on Defendant's expectation of confidentiality from the attorney-client relationship it had with Waldman Law.  The importance of maintaining confidentiality cannot be overstated.  See Hunt v. Blackburn, 128 U.S. 464, 470 (1888)("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.").  Furthermore, it appears to this Court that given this concern for confidentiality, lawsuits to collect legal fees must be brought by the attorney that is owed the fee.  Accordingly, this Court concludes that because this assignment will impinge on Defendant's expectation of confidentiality based on the attorney-client relationship it had with Waldman Law, the assignment (to the extent that it assigns Plaintiff the right to sue Defendant to collect the Waldman Debt) is against public policy and will not be recognized in this lawsuit.

---

[5]See Jeffrey Hazen's August 15, 2012 article, "How to handle lawyer-client fee disputes" in the Florida Bar News. This article can be found online at: https://www.floridabar.org/news/tfb-news/?durl=/DIVCOM/JN/JNNews01.nsf/Articles/4E39CA8BA77540C885257A4F0052AE64

Plaintiff argues that the Court will err if it relies on a violation of the Florida Bar's ethical rules and opinions to find the assignment void as against public policy. Plaintiff points to the Preamble to the Rules of Professional Conduct, which provides the following:

> Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached. In addition, violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. ***Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons.*** The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating a substantive legal duty. Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct.

Preamble to the Florida Rules of Professional Conduct (emphasis added). Furthermore, some courts have refused to invalidate a contract based on a violation of the Florida Bar's ethical rules. See Lee v. Department of Ins. & Treasurer, 586 So. 2d 1185, 1188, 1190 (Fla. 1st DCA 1991)(stating that using a violation of Rule 4-5.6, which prohibits a lawyer from making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties, to invalidate an agreement is beyond the scope of the Florida Rules of Professional Conduct; however, also finding that the conduct at issue did not violate Rule 4-5.6); Viles & Beckman, P.A. v. Lagarde, 2006 WL 2556941, at *9 (M.D. Fla. Sept. 1, 2006)(refusing to invalidate a contract that allegedly violated a fee sharing provision of

9

Rule 4-5.6 and citing to Lee in concluding that "Florida courts have held that it is error to use an ethical rule as a basis to invalidate or render void a provision in a private contract between two parties").

However, other courts have refused to enforce a contract based on a violation of the Florida Bar's ethical rules. For example, in Chandris v. Yanakakis, 668 So. 2d 180 (Fla. 1996), the Florida Supreme Court addressed the issue of the validity of a contingency fee agreement that failed to comply with the Rules Regulating the Florida Bar. In Chandris, the court stated the following:

> [W]e hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees [Rule 4-1.5(f)] in order to be enforceable. We have determined that the requirements for contingent fee contracts are necessary to protect the public interest. Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule. Moreover, enforcing contingent fee agreements that are not in compliance with the rule would be unfair as well as constitute a competitive disadvantage to members of The Florida Bar who do comply with the rule.

Id. at 185–86. The Eleventh Circuit followed the Chandris decision and refused to enforce a non-compliant contingency fee agreement in Foodtown, Inc. of Jacksonville v. Argonaut Ins. Co., 102 F.3d 483, 485 (11th Cir. 1997).

The Eleventh Circuit has also refused to enforce contracts that violate Rule 4-1.8(a) of the Florida Rules of Professional Conduct, which prohibits a lawyer from entering into a business transaction with a client unless certain requirements are met. See Santiago v. Evans, 547 Fed. Appx. 923, 926–27 (11th Cir. 2013); Mursten v. Caporella, 619 Fed. Appx. 832, 835–36 (11th Cir. 2015).

10

In Mursten, a lawyer and client entered into an oral agreement for the lawyer to provide services in exchange for a certain amount of money if a certain sale occurred or $4 million of the client's shares in National Beverage if the sale did not occur. See Mursten, 619 Fed. Appx. at 833–34. The lawyer eventually sued the client to enforce the oral fee agreement, and the client argued that the agreement was unenforceable because it violated Rule 4-1.8 because it was an impermissible unwritten business transaction with a client. See id. at 834. The appellate court agreed with the client, stating:

> The disclosure and recording requirements in Rule 4–1.8(a) [requiring the agreement to be in writing] serve the public interest by thwarting "overreaching when [a] lawyer participates in a business, property, or financial transaction with a client," R. Regulating Fla. Bar 4–1.8 *cmt. on business transactions between client and lawyer*. Overreaching is particularly of concern when a lawyer seeks to enforce an agreement to acquire stock worth millions of dollars in a lucrative business of a client who is also a personal friend. And the Supreme Court of Florida has held that a fee contract between a lawyer and a client that "fails to adhere to the[ ] requirements [of the Rules Regulating the Florida Bar] is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule." Because the alleged [oral agreement] would have violated the express requirements of and purposes for Rule 4–1.8(a), the district court did not err in determining that the alleged [oral agreement] between [the lawyer] and [his client] would be void.

Id. at 835–35 (internal citations omitted).

Likewise, in Santiago, a lawyer lent his client some money, and the client agreed to repay the loan by selling the lawyer his boat. See Santiago, 547 Fed. Appx. at 926. The sale of the boat was a business transaction between a lawyer and his client that violated Rule 4-1.8, because the lawyer did not advise the client to seek another lawyer to review the terms of the deal. See id. In concluding that the agreement was void as against public policy, the appellate court

stated the following:

> [U]nder Florida law, a contract that contravenes an established interest of society can be found to be void as against public policy. . . . . Substantively, it is clear that [the lawyer] violated the Rules Regulating the Florida Bar. . . . However, neither of the parties, nor the district court, cites to a Florida case expressly concluding that business transactions between a lawyer and a client that violate the Rules Regulating the Florida Bar are void as against public policy. The decision by the Florida Supreme Court in Chandris does indicate, however, that Florida law supports a conclusion that contracts between a lawyer and a client that violate the Rules Regulating the Florida bar are void as against public policy. Furthermore, Florida law clearly contemplates that contracts that contravene an established interest of society—such as the regulation of the business relationships between lawyers and clients—can be found void as against public policy. Therefore, it was not error for the district court to conclude that the contract between [the lawyer] and [his client] was void as against public policy, and therefore legally void and unenforceable.

Id. at 926–27 (internal citations omitted).

In the instant case, Defendant argues that Waldman Law's assignment of the Waldman Debt to Plaintiff (to which Defendant has not consented) will lead to a violation of Rule 4-1.6(a) of the Rules of Professional Conduct, which prohibits Waldman Law from revealing information relating to its representation of Defendant without Defendant's consent (unless certain exceptions are met, none of which are applicable in this case). In order for Defendant to challenge the reasonableness of the Waldman Debt, confidential information relating to Waldman Law's representation of Defendant would have to be disclosed to Plaintiff. The importance of confidentiality between a lawyer and client cannot be overstated, and this Court will not condone such a breach of confidentiality.

Protecting attorney-client confidentiality is a reason to refuse to recognize the assignment in this case. In Law Office of David J. Stern, P.A. v. Security National Servicing Corp., 969 So.

2d 962, 969–70 (Fla. 2007), the Florida Supreme Court determined that protecting attorney-client confidences was a reason for not allowing clients to assign their attorney malpractice claims. In coming to this decision, the court stated that allowing clients to assign their attorney malpractice claims would result in the assignees having access to confidential information, which would "imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." Id at 970 (quotation marks and citations omitted).

If clients cannot assign their attorney malpractice claims based on confidentiality concerns, then it seems that the same confidentiality concerns should bar lawyers from assigning their right to sue their clients to collect disputed attorneys' fees. This is in line with Florida Ethics Opinion 72-43 that allows the assignment of the accounts receivable representing the attorneys' fee due, but requires that the assignment limit to the lawyer the right to file suit to collect such fees.

As stated by the court in Santiago: "Florida law supports a conclusion that contracts . . . that violate the Rules Regulating the Florida bar are void as against public policy. Furthermore, Florida law clearly contemplates that contracts that contravene an established interest of society—such as the regulation of the business relationships between lawyers and clients—can be found void as against public policy." Santiago, 547 Fed. Appx. at 926–27.

Accordingly, the Court finds that Waldman Law's assignment of the right to file suit to collect the Waldman Debt to Plaintiff is void as against public policy and does not provide Plaintiff standing to sue Defendant. As a result, this case must be dismissed.

## IV. Conclusion

Based on the above, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion to Dismiss (Doc. No. 6) is **GRANTED**, as Plaintiff lacks standing, and thus, this Court lacks subject matter jurisdiction over this case.

(2) This case is **DISMISSED WITHOUT PREJUDICE** due to lack of subject matter jurisdiction, and the Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 9th day of February, 2018.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge